**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DONALD JORDAN, #B-66331** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00723-MJR** |
| | ) | |
| **CLINT MAYER, LT. HUGHES** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| **JASON HART, and COWAN,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Donald Jordan, an inmate currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

### The Complaint

The facts pertinent to the Court's threshold review are as follows: Plaintiff Jordan Duncan shared a cell with inmate Earl Faber, who is allegedly a Vice Lord member. Doc. 1, p. 10. In late February 2014, Faber received a kite (note) from inmate Michael Smith stating that Faber must pay Vice Lord gang dues; if he did not, the letter stated, he would be attacked by

other Vice Lord members. *Id.*  On the evening of February 22, 2014, Plaintiff contends that Faber and another inmate, Burks (also a Vice Lord), had a heated argument while they were each in their own cells (cell 124 and 126, respectively).  Burks had been directed by Smith to attack Faber if Faber did not pay his dues.  Plaintiff asserts that Burks stated he would "get" Faber in the morning. *Id.* at 11.  Meanwhile, Plaintiff and other inmates were divvying up time to make calls on a single cell phone that was being shared amongst them.  *Id.*  When it came time for Burks to use the phone, Plaintiff alleges that Burks yanked the cord and severed it.  *Id.*

Fearful that Burks would follow through on his threat to attack Faber, Plaintiff sent a note that evening to Internal Affairs and the cell house sergeant and lieutenant informing them that the Vice Lords were planning to attack Faber. *Id.*  The next morning, Plaintiff was interviewed by Defendant Mayer (Sergeant of Internal Affairs) regarding the alleged threat. During the interview, Mayer repeatedly asked Plaintiff why he was holding his head down. When Plaintiff explained that he his psychotropic medications made him a little drowsy, Mayer purportedly stated, "Your fucking crazy, your an nut job for taking all those medications. . . . I don't believe anything your saying.  I know [Burk] he use to be one of my workers.  And I know [Smith] has some rank in this building for the Vice Lords, he's going to do something for me – so just drop this situation." *Id.* (typos and errors in original).  Plaintiff responded that he couldn't drop it because he was afraid that they would attack him as well, since he and Faber were friends.  Plaintiff states that Mayer then forcefully grabbed Plaintiff's head, raised him up by his head, put his hands around his throat and said that he was going to give Plaintiff a year in segregation. *Id.*

Burks, Smith, Faber and Plaintiff were all placed in segregation pending the investigation. *Id.* at 12.  Burks and Smith were released from segregation two days later and

Faber was released a week or so thereafter. *Id*.  On March 5, 2014, Plaintiff was issued a disciplinary report and charged with "Impeding or Interfering with an Investigation"; "Damage or Misuse of Property"; and "Giving False Information to an Employee."  Plaintiff filed a request to have Faber testify as a witness at his disciplinary hearing. *Id*. at 26, Ex. C.  On March 10, 2014, Plaintiff appeared before the Adjustment Committee Hearing Board, which consisted of Defendants Hughes, Hart, and Cowan. *Id*. at 8.  Faber had not been called as a witness.  When Plaintiff protested and requested a continuance, Hughes responded, "oh well" and "that's not going to happen." *Id*.  Plaintiff alleges that the Board issued a decision without reviewing Plaintiff's statement or allowing Plaintiff to call any witnesses.  Relying on "information" received from "five confidential sources," the Board found that Plaintiff had been "untruthful in his kite and interview."  Based again on this, the Board found Plaintiff guilty of "Impeding or Interfering with an Investigation" and "Giving False Information to an Employee." *Id*. at 27.  The Board further concluded that Plaintiff had an argument with Burks over the phone and had pulled out and destroyed the phone cord while Burks was talking on the phone. *Id*.  The final summary report states that phone calls were monitored and corroborated this finding. *Id*.  Nonetheless, Plaintiff was found not guilty of "Damage or Misuse of Property." *Id*.  Based on the nature of the offense, Plaintiff was sentenced to one year C-Grade, one year segregation, and one year commissary restrictions. *Id*.  Plaintiff filed multiple administrative grievances complaining about Defendant Mayer's conduct as well as the Board's handling of the disciplinary hearing.  Plaintiff has also written letters to Defendant Harrington, warden at Menard during the time in question, and Godinez, Director of the Illinois Department of Corrections.

Although the body of the complaint does not explicitly state that Plaintiff was subsequently transferred out of Menard and into Pontiac Correctional Center ("Pontiac"), Plaintiff has scribbled out his address at Menard and substituted in an address at Pontiac.  *Id.* at 1, 19.   A review of the Illinois Department of Corrections inmate locator website (www2.illinois.gov/idoc) confirms that Plaintiff is now housed at Pontiac.

**Request for Temporary Restraining Order and Preliminary Injunction**

In his prayer for relief, Plaintiff requests monetary damages and attorney fees.  In addition, although Plaintiff did not file a motion for a preliminary injunction or temporary restraining order, he requests both in his prayer for relief. Doc. 1, p. 19.  This is the only mention of a preliminary injunction or temporary restraining order made throughout the entire complaint, and Plaintiff fails to specify what precisely he seeks to enjoin.   Since Plaintiff has been transferred to Pontiac, the only possible ongoing violation would be if Plaintiff remains in segregation at Pontiac – but it is unclear whether or not that is the case.  All of the other claims raised in this matter relate to past conduct or conditions related to his confinement specifically at Menard.  Any request for injunctive relief as to those claims is moot.  The Court, however, cannot be put in the position of guessing what relief Plaintiff seeks.  As such, without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court is of the opinion that neither a TRO nor a preliminary injunction should be issued in this matter at this time.

If Plaintiff wishes to pursue a preliminary injunction or temporary restraining order, he may request either or both in a separate motion.  However, the motion should *specifically identify* what Plaintiff seeks to enjoin and any relevant facts in support of the motion.  Plaintiff should bear in mind that a TRO is an order issued without notice to the party to be

enjoined that may last no more than 14 days. FED. R. CIV. P. 65(b)(2). A TRO may issue without notice **only** if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). Likewise, the United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)). In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* amended complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has articulated the following constitutional claims, which shall receive further review:

**Count 1:** **Defendant Mayer used excessive force against Plaintiff in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.**

Plaintiff alleges that Defendant Mayer grabbed Plaintiff's head and throat and threatened Plaintiff. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). This is a factual determination that cannot be

resolved at the pleadings stage of this case.  Thus, Plaintiff may proceed on his excessive force claim against Defendant Mayer at this time.

**Count 2:**          **Defendant Mayer discriminated against Plaintiff for being mentally ill in violation of the Equal Protection Clause.**

The complaint contains a general allegation that there is a "widespread unwritten policy, custom, and practice for staff to discriminate against participants in the Mental Health programs."[1] Doc. 1, p. 12.   More specifically, Plaintiff alleges that Defendant Mayer discriminated against him on the basis of his mental illness in violation of the Equal Protection Clause.  It is not entirely clear whether Plaintiff's equal protection claim relates solely to the handling of this incident or if he intends to assert is a broader claim about the general treatment of mentally ill inmates.   Plaintiff has included the statements of two other inmates who participate in the mental health program. *See* Doc. 1, Exhibits H and I.  These inmates support Plaintiff's contention that mentally ill inmates receive differential treatment.

Mental illness is not considered a suspect classification for purposes of scrutiny under the Equal Protection Clause, *see City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985).  However, an inmate "need not allege the presence of a suspect classification or the infringement of a fundamental right in order to state a claim under the Equal Protection Clause. The lack of a fundamental constitutional right or the absence of a suspect class merely affects the court's standard of review; it does not destroy the cause of action."  *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978).   Instead, "in the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *Id.* (quoting *French v.*

---

[1] Plaintiff has not named as a defendant "staff at Menard," nor could he proceed on a claim against "staff" or "Menard" or even the Illinois Department of Corrections under § 1983.

*Heyne*, 547 F.2d 994, 997 (7th Cir. 1976)).  The Court finds that the complaint has sufficiently–albeit minimally–stated an equal protection claim against Defendant Mayer.

**Count 3:**      **Defendant Mayer retaliated against Plaintiff for filing grievances and reporting threats made by other inmates.**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000).  To state a claim of retaliation "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

Plaintiff asserts that Defendant Mayer sent Plaintiff to segregation because Plaintiff refused to comply with Mayer's demand that Plaintiff drop his request for an investigation into the threats made against his cellmate.  Plaintiff also claims that Mayer filed a false disciplinary report against Plaintiff when Plaintiff filed a grievance complaining about Mayer's conduct.  Plaintiff, moreover, contends that Mayer further retaliated against Plaintiff by telling other inmates that Plaintiff had snitched on them.

An inmate has a First Amendment right to file grievances about the conditions of his confinement.  *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).  Inmates must also have a right to notify the administration when other inmates engage in extortion or threatening behavior without fear of retaliation.  At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in Mayer's decision to take disciplinary action against Plaintiff.  *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).  This is a question that cannot be

resolved at the pleadings stage of this case.  Thus, Plaintiff may proceed on his retaliation claim

against Mayer at this time.

**Count 4:**        **Defendants Hughes, Hart, and Cowan deprived Plaintiff of his right to due process at his disciplinary hearing.**

Prison disciplinary hearings satisfy procedural due process requirements where an

inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours

prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to

call witnesses and to present physical/documentary evidence, but only when doing so will not

unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of

the reasons for the action taken against the prisoner.  *See Wolff v. McDonnell*, 418 U.S. 539, 563-

69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).  Here, Plaintiff claims that

Defendants Hughes, Hart, and Cowan (as members of his Adjustment Committee Hearing

Board) denied him due process of law when they denied him the right to call a witness at his

disciplinary hearing and refused to continue the hearing until such time when his witness could

be called.  Moreover, Plaintiff contends that the Board further violated his due process rights

when it failed to review evidence in the case outside of the disciplinary report.

While not every deprivation of a protected interest triggers due process

protections, the Seventh Circuit has noted that "a liberty interest may arise if the length of

segregated confinement is substantial and the record reveals that the conditions of confinement

are unusually harsh." *Marion v. Columbia Correction Inst.,* 559 F.3d at 697-98 (7th Cir. 2009)

(collecting cases).  In *Marion*, the court concluded that a term of 240 days of segregation *may*

implicate liberty interests and remanded the case for further scrutiny of the actual conditions of

confinement. *Id*. at 698-99.  *Marion* further noted, "Our decision that Mr. Marion's complaint

states a claim is consistent with the decisions of our sister circuits.  Indeed, other courts of

appeals have held that periods of confinement that approach or exceed one year may trigger a cognizable liberty interest without any reference to conditions." *Id.*

        Following the disciplinary hearing, the Board sentenced Plaintiff to a one-year term in disciplinary segregation.  Plaintiff does not provide much detail regarding the conditions of his segregation other than the fact that segregation has disrupted his receipt of mental health services, which he alleges has been detrimental to his mental health.  It seems quite possible that the Board's disciplinary action implicated a liberty interest and therefore, Plaintiff was entitled to the due process protections specified in *Wolff*, including the right to call witnesses (with certain exceptions).  Therefore, dismissal of Plaintiff's due process claims against Defendants Hughes, Hart, and Cowan would be inappropriate at this stage.  Plaintiff may proceed with his request for monetary damages against these individuals.

**Count 5:**      **Defendant Harrington violated Plaintiff's rights when he failed to adequately respond to Plaintiff's grievances.**

        Lastly, Plaintiff contends that Defendant Harrington was directly involved in each constitutional deprivation because he was notified of the problems, but failed to do a comprehensive investigation into the matter.  Plaintiff contends that Harrington, as warden, was ultimately responsible for the well-being of inmates at Menard.  There is no supervisory liability in a § 1983 action; thus to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  A civil rights action against state officials under 42 U.S.C. § 1983 is "a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.

1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005).  Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation.  A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added).  In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

Plaintiff contends that Defendant Harrington was informed of Plaintiff's situation, reviewed the investigation, and approved of the disciplinary actions taken against Plaintiff.  At this juncture, more facts are needed to determine whether that was in fact the case.  Therefore, this claim against Defendant Harrington, in his individual capacity, shall also receive further consideration.

In summary, Plaintiff may proceed on his excessive force claim (Count 1), equal protection claim (Count 2), and retaliation claim (Count 3) against Defendant Mayer; and his due process claims (Count 4) against Defendants Hughes, Hart, and Cowan.  Plaintiff may also proceed on (Count 5) against Defendant Harrington.  Because Plaintiff is also seeking injunctive relief, but has moved to Pontiac, the Court shall add S.A. Godinez, Director of the Illinois Department of Corrections, as a Defendant in his official capacity for purposes of injunctive relief.  *See* Fed. R. Civ. P. 21; Fed. R. Civ. P. 17(d);[2] *see also Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

---

[2]  Federal Rule of Civil Procedure 21states in pertinent part:  "On motion or on its own, the court may at any time, on just terms, add or drop a party."  Rule 17(d) provides:  "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

**Pending Motion**

Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 2) remains pending and shall be addressed by the Court in a separate order.

Plaintiff's motion for recruitment of counsel (Doc. 3) also remains pending and shall be referred to United States Magistrate Judge Williams and addressed in a separate order.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against Defendant **MAYER** on **COUNTS 1, 2,** and **3**; and Defendants **HUGHES, HART,** and **COWAN** on **COUNT 4** shall proceed. Plaintiff may also proceed on his claim for damages on **COUNT 5** against Defendant **HARRINGTON**.

**IT IS FURTHER ORDERED** that the Clerk shall add Defendant **S.A. GODINEZ** in his official capacity for purposes of injunctive relief only.

The Clerk of Court shall prepare for Defendants **MAYER, HUGHES, HART, COWAN, HARRINGTON,** and **GODINEZ**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work

address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.   Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or

give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 16, 2014**

s/ MICHAEL J. REAGAN
United States District Judge