IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD M. JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CLINT MAYER, | )   Case No. 14-cv-0723-MJR-SCW |
| L.T. HUGHES | ) |
| RICHARD HARRINGTON, | ) |
| SALVADOR A. GODINEZ, | ) |
| JASON HART, | ) |
| and COWAN, | ) |
| | ) |
| Defendants. | ) |

## ORDER

REAGAN, District Judge:

### INTRODUCTION AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff Donald Jordan, a prisoner at Pontiac Correctional Center ("Pontiac"), filed this § 1983 civil rights lawsuit against multiple state actors at Menard Correctional Center ("Menard"), alleging deprivation of various constitutional rights. The case comes before the Court on Plaintiff's Motion for a Preliminary Injunction.

Plaintiff's Complaint included a bare request for a preliminary injunction and a temporary restraining order. (Doc. 1, p. 19). The threshold order noted both that Plaintiff had failed to state what conduct he wished to enjoin, and that his transfer from Menard to Pontiac likely made any request for injunctive relief moot. (Doc. 6, p. 4). Although the threshold order found that Plaintiff's request for

1

injunctive relief was too vague, it also added S.A. Godinez for the purposes of injunctive relief. (Doc. 6, p. 11).

Plaintiff filed his Motion for Preliminary Injunction on July 28, 2014. (Doc. 15). At that time, waivers of service had been sent to the Defendants, but Defendants had neither appeared nor answered. After the Court entered a Notice of Impending Dismissal on October 29, 2014, (Doc. 24), Defendants finally appeared via answer on October 30, 2014. (Doc. 28). On March 5, 2015, the Court ordered Defendants to file a Response to the pending request for a preliminary injunction. (Doc. 36). Defendants filed such a response on March 13, 2015. (Doc. 37).

In his Motion, Plaintiff requests that the court enjoin Defendants from continuing their course of conduct "of violating Plaintiff's constitutional rights by maintaining him in segregation." (Doc. 15, p. 2). Plaintiff requests immediate release from segregation, restoration to "A-grade" status, and to be placed in protective custody at Pontiac rather than at Menard. (Doc. 15, p. 2). He further requests not to be transferred back to Menard Correctional Center or to suffer retaliation by IDOC officials. (Doc. 15).

For the following reasons, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction. (Doc. 15).

### FACTUAL BACKGROUND

On or about March 5, 2014, Plaintiff was issued a disciplinary report and charged with Impeding or Interfering with an Investigation, Damage or Misuse of Property, and Giving False Information to an Employee. (Doc. 1-1, p. 2). Plaintiff was found guilty only of two charges: Impeding or Interfering with an Investigation

and Giving False Information to an Employee. (Doc. 1-1, p. 8). Plaintiff was sentenced to one year in segregation, one year "C-grade," and one year of a commissary restriction. (Doc. 1-1, p. 8).

Plaintiff alleges that the disciplinary report arises from a letter he sent to internal affairs. On or about February 22, 2014, Plaintiff had an argument with a Vice Lord gang member about the use of a telephone. (Doc. 16, p. 11). Subsequently, Plaintiff sent a letter to internal affairs stating that his cellmate, a member of the Vice Lord Gang, would be attacked by other members of the same gang. (Doc. 16, p. 11). The note detailed his observations of his cellmate being threatened and harassed by the gang members. (Doc. 16, p. 11).

The next day, Plaintiff was interviewed by Sergeant Mayer of Internal Affairs about the allegations contained in Plaintiff's letter. (Doc. 16, p. 11). Plaintiff asserts that during the interview he disclosed to Sergeant Mayer that he had been taking psychotropic medications which caused him to experience drowsiness. (Doc. 16, p. 11). Sergeant Mayer verbally assaulted him, saying "Your fucking crazy, your an nut job for taking all those medications." (*sic*) (Doc. 16, p. 11). Sergeant Mayer asked Plaintiff to drop his allegations. (Doc. 16, p. 11). When Plaintiff refused, Sergeant Mayer physically assaulted Plaintiff by grabbing his head and yanking his head to an upright position so they were standing face-to-face. Sergeant Mayer then informed Plaintiff that he would receive a year in segregation and falsified Plaintiff's disciplinary report. (Doc. 16, p. 11 ).

Sergeant Mayer conducted an investigation to confirm the validity of the statements contained in Plaintiff's note. (Doc. 1-1, p. 2). After interviewing five

confidential sources, Sergeant Mayer concluded that Plaintiff's letter contained untruthful statements and issued a disciplinary report. (Doc. 1-1, p. 2). Plaintiff was charged with Impeding or Interfering with an Investigation, Damage or Misuse of Property, Giving False Information to an Employee. (Doc. 28.1, p. 2). As a result, Plaintiff was placed in temporary confinement. (Doc. 1-1, p. 2). On or about March 6, 2014, the reviewing officer cited Plaintiff's conduct as a "major infraction" and affirmed Plaintiff's confinement. (Doc. 1-1, p. 2). On or about March 10, 2014, Plaintiff appeared for a hearing before the Adjustment Committee Hearing Board. (Doc. 1, p. 8). Defendants Hughes, Hart and Cowan were members of that hearing committee. (Doc. 1, p. 8). Plaintiff named his cellmate as witness for his hearing. (Doc. 1, p. 8).

Plaintiff's witness was not called to testify, and the committee members failed to read his written statement. (Doc. 1, p. 9). Plaintiff pled not guilty to all charges and requested a continuance to prepare his witness. (Doc. 1, p. 9). Plaintiff's request was promptly denied. (Doc. 1, p. 9). Plaintiff was found guilty of all charges except damage or misuse of property. (Doc. 1-1, p. 8). Plaintiff was sentenced to one year in segregation, one year C-grade, and one year commissary restriction. (Doc. 1-1, p. 8).

In Defendants' response to Plaintiff's Motion, they submit the affidavit of Jason Hart, who served as the Chairperson of the Adjustment Committee hearing inmate disciplinary reports. (Doc. 37-1, p. 1). Hart affirmed that prisoners must request their witnesses prior to the hearing, and that had Plaintiff requested his witness prior to the hearing, that fact would have been noted on the disciplinary

report. (Doc. 37-1, p. 1). The report contains no such notation. (Doc. 37-1, p. 3). Therefore, Hart concludes that Plaintiff did not request his witness prior to the hearing. (Doc. 37-1, p. 1).

In his motion, Plaintiff asserts that his cellmate's testimony will corroborate the statements contained in his letter. (Doc. 16, p. 2). Plaintiff also asserts that his cellmate's testimony will reveal that he'd been threatened with a year in segregation if he did not drop his complaint against the Vice Lords and deny the truth of Plaintiff's letter. (Doc. 16, p. 3). Plaintiff attached an affidavit from his cellmate (Earl Faber) to his Complaint. (Doc. 1-1, p. 21-25). Although most of the affidavit addresses the objectionable conditions at Menard, at one point Faber appears to address the relevant issues. (Doc. 1-1, p. 24). He states, "I informed Menard Administration about individuals who are attempting to extort me and so forth and [segregation] is where I ended up for trying to protect my life." (Doc. 1-1, p. 24). Faber does not provide any details about Plaintiff's role in reporting the extortion attempt to Menard staff. Nor does his affidavit state that other inmates were planning on attacking him.

Plaintiff contends that the Hearing Committee's refusal to hear his cellmate's testimony was a violation of his Fourteenth Amendment right to due process. (Doc. 16, p. 5). Plaintiff cites to Menard Rule Manual for Committee Hearing Board Procedures and asserts that he should have been granted a continuance because his witness was not interviewed and because the committee did not consider his written statement before finding him guilty. (Doc. 16, p. 5).

Although Plaintiff does not contend that the conditions of segregated confinement are egregious, he argues that a one-year sentence in segregation is unusually harsh for a seriously mentally ill patient. He further asserts that his segregated confinement has disrupted his mental health treatments, which has caused him to suffer extreme depression and other mental effects. (Doc. 16, p. 9).

Defendants have submitted an affidavit from Robert Snyder attesting that Plaintiff was released from disciplinary segregation at Pontiac on December 23, 2014, and placed into protective custody at his request. (Doc. 37-2. p. 1). Plaintiff's request for protective custody is still formally pending, but he is being housed there while it is being processed. (Doc. 37-2, p. 1).

## ANALYSIS

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To secure a preliminary injunction, a movant must show: (1) plaintiff is likely to succeed on the merits; (2) he is likely to suffer irreparable harm without the injunction; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Mazurek*, 520 U.S. at 972. According to the Prison Litigation Reform Act (PLRA) injunctions in the prison context must be "narrowly drawn,

extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C.A. § 3626. Courts may issue preliminary injunctions only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1).

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

As an initial matter, some of the relief requested by Plaintiff is outside of the scope of his Complaint or speculative. The Court cannot enjoin IDOC from transferring Plaintiff back to Menard Correctional Center because there is no evidence that such a transfer is planned or imminent. In the absence of such evidence, any transfer would be speculative because, at present, there is no harm to correct. Likewise, the Court cannot enjoin IDOC employees from harassing Plaintiff because there is no evidence that such harassment is occurring. Plaintiff's placement on "C grade" does not violate his due process rights. *See, e.g., Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997). The only harm that the Court can address here is the harm stemming from the denial of Plaintiff's due process

7

rights—his placement in segregation. *See Marion v. Columbia Correctional Institution*, 559 F.3d 693, 698 (7th Cir. 2009)

And on that point, Plaintiff's request for injunctive relief is MOOT. Plaintiff was released from disciplinary segregation on December 23, 2014 and placed in protective custody. That is the very relief that he seeks. There is no further relief that the Court could grant. Plaintiff's request for injunctive relief is accordingly **MOOT.**

Even if his request were not moot, Plaintiff is unlikely to succeed on the merits. Plaintiff alleges that his due process rights were violated because Defendants failed to permit him to call his witness, failed to permit Plaintiff to continue the hearing until such time as his witness could be called, and failed to review evidence outside of the disciplinary report. Due process requires the ability to present evidence to the decision-maker. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Due process requires prison disciplinary hearings to include 1) written notice of the charge against the prisoner, given at least 24 hours in advance; 2) the right to appear before an impartial body; 3) the right to call witnesses and to present documentary evidence, when doing so will not implicate safety and security issues; 4) a written statement of the charges against the prisoner. *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988) (citing *Wolff*, 418 U.S. at 563-67). The law only requires that the decision be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Prison officials have broad discretionary authority over the institutions they manage. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Here the prison rules

8

required Plaintiff to submit his witness request in advance of the hearing.  Plaintiff did not do so.  Plaintiff cannot ask to call a witness when the hearing had already commenced.  Because Plaintiff did not follow the prison's rules about when to request witnesses, his due process rights were not violated.  Plaintiff is unlikely to succeed on the merits of his claim, and his request for a preliminary injunction fails.

Because the relief that Plaintiff requests has already been given to him, and because his has failed to prove a likelihood of success on the merits, the Court **DENIES** Plaintiff's motion for preliminary injunction.  (Doc. 15).

## CONCLUSION

Mr. Jordan's Motion for Preliminary Injunctive Relief (Doc. 15) is **DENIED**.

**IT IS SO ORDERED**

**Dated: March 19, 2015.**

s/ *Michael J. Reagan*
Michael J. Reagan
Chief Judge
United States District Court
