## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONALD JORDAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.**  14-cv-723-SCW |
| | ) | |
| **CLINT MAYER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

*Pro se* Plaintiff Donald Jordan is an inmate currently incarcerated at Stateville Correctional Center.  He brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights relating to discipline he received while incarcerated at Menard Correctional Center ("Menard").   This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 70).   The time for Plaintiff to respond to Defendants' motion has passed, and this matter is ripe for disposition.   For the reasons articulated below, Defendants' Motion for Summary Judgment (Doc. 70) is **GRANTED**.

### FACTUAL BACKGROUND

Since Plaintiff has failed to respond to Defendants' motion, the Court considers the facts set forth by Defendants as undisputed.   *See* **FED.R.CIV.P. 56(e); SDIL-LR 7.1(c).**

*See also Smith v. Lamz*, **321 F.3d 680, 683 (7th Cir. 2003);** *Flynn v. Sandahl*, **58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no undisputed material facts).**   As the Court is deciding a summary judgment motion, however, it views those facts in the light most favorable to Plaintiff.   *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012)**.

On either February 22 or 23 of 2014, while Plaintiff was an inmate at Menard, he sent a request slip to a correctional officer indicating that a possible assault was going to occur.   (Doc. 71-1, p. 3).   Plaintiff indicated that his cellmate was going to be assaulted by the Vice Lords, the gang with whom the cellmate was associated.   (*Id*.).   Defendant Mayer then interviewed Plaintiff regarding the letter.   (*Id*.).   Plaintiff told Mayer that some gang members wanted to extort Plaintiff's cellmate to pay some gang dues, and Plaintiff was afraid his cellmate would be harmed because the cellmate did not want to pay.   (*Id*.).

Defendant Mayer, however, told Plaintiff he did not believe Plaintiff's story. (*Id*.).   Mayer asked if Plaintiff was on any psychotropic medications, and Plaintiff indicated he was taking Prozac, Depakote, and Trazodone.   (*Id*.).   When asked by Defendant Mayer why Plaintiff was holding his head down during the interview, Plaintiff indicated that it was because he had just woken up and he was still drowsy from his medication.   (*Id*.).   Defendant Mayer then stated, "You're fucking nuts if you are taking all those medications."   (*Id*.).   He told Plaintiff to "[r]aise [his] head up," and grabbed Plaintiff by the head, pushed his head up, and grabbed Plaintiff's throat,

squeezing it.   (*Id.*).   In his description of the encounter, Plaintiff does not claim he was choked, however.   Mayer again told Plaintiff that he did not believe anything Plaintiff was saying.   (*Id.*).   Plaintiff was handcuffed during this interview.   (*Id.*).   After the interview, on February 25, 2014, Defendant Mayer issued Plaintiff a disciplinary ticket for, *inter alia*, impeding with an investigation.   (*Id.* at 4).   The disciplinary ticket was for three infractions based upon the determination that Plaintiff had sent a false note to the internal affairs unit, that he had impeded with an investigation, that he damaged or misused property, and gave false information.   (Doc. 71-2, p. 1).   Among other allegations, the disciplinary ticket indicated that Plaintiff wrote a kite stating that there was going to be a gang fight with possible stabbings, but that the information provided by Plaintiff was false.   (*Id.*).   The ticket was based on five confidential sources who resided in the area near Plaintiff.   (*Id.*).

As his deposition, however, Plaintiff testified that he believed Defendant Mayer retaliated against him.   (Doc. 71-1, p. 12).   Plaintiff testified that he filed grievances prior to Defendant Mayer issuing the February 25 disciplinary ticket, but that those grievances were not processed.   (*Id.*).   Plaintiff was not sure if he had copies of those grievances or not.   (*Id.*).   Plaintiff also engaged in the following exchange at his deposition:

> Q.   So you are saying, and correct me if I am wrong, you are saying that Client Mayer retaliated against you because you filed some grievances?
>
> A.   No.
>
> Q.   Okay

A.   As I stated, I believe it all works in one hand, that for filing grievances, the excessive force and discriminating against psychiatric patients, such as myself.

Q.   Okay.   So I guess what I am trying to get at is, where is the retaliation?   Do you know where I am saying?

A.   Being placed in segregation for when I am coming to him with a complaint and without him even doing a thorough investigation, just automatically assume that I am lying, because I am a psychiatric patient and, therefore, I filed other grievances.

(*Id.*).

At his deposition, Plaintiff also indicated he was suing Defendant Mayer for "discrimination against a psychiatric patient and also for the excessive force that he used."   (*Id.* at 16).   In regards to the discrimination, Plaintiff indicated that the basis for that claim was due to Mayer calling him "fucking nuts" and because Defendant Mayer "immediately disregarded the threat that [Plaintiff] was under" after finding out Plaintiff took "psychotropic medications".   (*Id.* at 9).

On March 10, 2014, Plaintiff appeared before the Adjustment Committee as a result of the disciplinary ticket.   (*Id.* at 5).   At that hearing, Plaintiff was found guilty on two of the three offenses.   (*Id.* at 8).   He was sentenced to one year in segregation, one year on C-grade status, and one year commissary restriction.   (*Id.* at 19; Doc. 71-2, p. 5). Plaintiff was in disciplinary segregation from February 22, 2014 to December 23, 2014. (Doc. 71-2, p. 9).   During this time, in April 2014, he was transferred from Menard to Pontiac Correctional Center ("Pontiac").   (*Id.*).   While he was only seen by a mental health professional one time during his segregation at Menard, Plaintiff received

medication for his mental health conditions throughout his entire time in segregation. (Doc. 71-1, p. 8, 9).

Plaintiff also claims that Warden Richard Harrington ignored his letters and complaints regarding Defendant Mayer.  (*Id.* at 10)   Plaintiff testified that he sent Defendant Harrington a letter through the mail, and spoke with the warden on two occasions, regarding the incident with Defendant Mayer.  (*Id.*).   Plaintiff informed Defendant Harrington about the interview with Defendant Mayer, including how Mayer treated Plaintiff, and that Mayer did not believe Plaintiff's version of events.  (*Id.*). According to Plaintiff, Defendant Harrington said that he would look into it, and the next time they spoke, Harrington informed Plaintiff that he would be released from segregation.  (*Id.*).   Later, however, Plaintiff received a letter from Defendant Harrigton stating that Plaintiff's claims were unsubstantiated.  (*Id.*).

Pursuant to 28 U.S.C. §1915A, this Court performed a merits review of Plaintiff's Complaint.  (Doc. 6).   The Court found that Plaintiff pleaded the following counts:

**Count 1:**  **Defendant Mayer used excessive force against Plaintiff in violation of the Eight Amendment's prohibition against cruel and unusual punishment.**

**Count 2:**  **Defendant Mayer discriminated against Plaintiff for being mentally ill in violation of the Equal Protection Clause.**

**Count 3:**  **Defendant Mayer retaliated against Plaintiff for filing grievances and reporting threats made by other inmates.**

**Count 4:**  **Defendants Hughes, Hart, and Cowan deprived Plaintiff of his right to due process at his disciplinary hearing.**

**Count 5:**  **Defendant Harrington violated Plaintiff's rights when he**

**failed to adequately respond to Plaintiff's grievances.**

(*Id.* at 6 – 10).   Defendants now seek summary judgment on the counts set forth above.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.   The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.   ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**.   The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.   ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)**.   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   ***Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))**.   ***Accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   ***Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.* , 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011)**.   As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party,

giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

### EXCESSIVE FORCE

A prison official inflicts cruel and unusual punishment on an inmate, in violation of the Eighth Amendment, when the official intentionally uses excessive force against the inmate without penological justification. *See Wilkins v. Gaddy*, **559 U.S. 34 (2010);** *Hudson v. McMillian*, **503 U.S. 1 (1992).** In order to prevail on an excessive force claim, an inmate must demonstrate that the force used by the defendant was not applied in a good-faith effort to maintain or restore discipline, but, rather, was applied maliciously and sadistically to cause harm. *See Hudson*, **503 U.S. at 7.** However, not every malicious touch by a prison official gives rise to a cause of action under the Constitution. Unless the physical force is "repugnant to the conscience of mankind", force that is *de minimis* is not actionable. *Id.* **at 9 – 10 (quoting** *Whitley v. Albers*, **475 U.S. 312, 327 (1986)) (internal quotations omitted)**.

As asserted by Defendant Mayer, the Court finds Mayer's use of force against Plaintiff to be *de minimis*. Plaintiff seeks recovery against Mayer for grabbing Plaintiff by the head, pushing his head up, and grabbing and squeezing Plaintiff's throat. While the Court has strong doubts as to any penological justification for these actions, regardless, such a use of force is in line with other acts of force found to be *de minimis*. In *Outlaw v. Newkirk*, the evidence strongly suggested that a correctional officer's actions

in closing a cuffport door on a prisoner's hands, even if deliberate, was *de minimis*, and was not "repugnant to the conscience of mankind". **Outlaw v. Newkirk, 259 F.3d 833, 839 – 40 (7th Cir. 2001)**. In **DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000),** the Seventh Circuit held that a correctional officer's act in shoving a prisoner into a door frame "qualifie[d] as the kind of de minimis use of force that does not constitute cruel and unusual punishment". **DeWalt, 224 F.3d at 620**. There the court noted that the officer's use of force was isolated and "unaccompanied by further uses of force." **Id. at 619**. Here, Defendant Mayer's actions were also an isolated incident and were not accompanied by additional uses of force. Additionally, in **Felder v. Diebel, 2012 WL 6690239 (W.D. NY, Dec. 21, 2012),** a district court held that a correctional officer's actions in grabbing a prisoner's throat and slapping him twice were *de minimis*. **Felder, 2012 WL 6690239 at *1, *5**

In contrast, in **Thomas v. Stalter, 20 F.3d 298 (7th Cir. 1994)**, the Seventh Circuit held that a prisoner made *prima facie* case for excessive force where he alleged, that while having blood drawn, he was held down by several officers and punched in the mouth. **Thomas, 20 F.3d at 301 – 02**. The Court finds that Defendant Mayer's actions are more in line with the actions in line of cases involving *de minimis* acts of force rather than the act found in *Thomas*.

While the Court does not condone Defendant Mayer's alleged actions, and finds them distasteful, they do not constitute an Eighth Amendment violation. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,

violates a prisoner's constitutional rights." *Johnson v. Glick,* **481 F.2d 1028, 1033 (2d. Cir. 1973)**.   As such, since the undisputed facts examined in the light most favorable to Plaintiff fail to demonstrate Plaintiff can succeed on his excessive force claim, summary judgment is appropriate as to Count 1 against Defendant Mayer.

### Equal Protection

The Fourteenth Amendment to the United States Constitution states in relevant part that "[n]o state shall…deny to any person within its jurisdiction the equal protection of the laws." **U.S. Const. amend. XIV, § 1.**   The Equal Protection Clause protects one from disparate treatment based upon his or her status in a protected class.   *Greer v. Amesqua,* **212 F.3d 358, 370 (7th Cir. 2000)**.   Generally, to prevail on a claim for an Equal Protection violation, a prisoner must demonstrate that he is a member of a protected class, and that state actors treated members of the prisoner's class less favorably than people not in the class but who are similarly situated.   *See Brown v. Budz,* **398 F.3d 904, 916 (7th Cir. 2005);** *Harris v. Greer,* **750 F.2d 617, 618 – 19 (7th Cir. 1984)**.   However, "isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." *Shango v. Jurich,* **681 F.2d 1091, 1104 (7th Cir. 1982)**. Such events "[a]t most…demonstrate[] 'a mere inconsistency in prison management…which…may not in itself constitute a cognizable equal protection claim.'" *Id.* **(quoting** *Durso v. Rowe,* **579 F.2d 1365, 1372 (7th Cir. 1978))**.

Whether the alleged injurious act involved a protected class or a fundamental right determines the standard of review applied by a court.   *See City of Cleburne, Tex.*

*v. Cleburne Living Center*, **473 U.S. 432, 440 – 41 (1985)**.   When a state action or statute is based on a protected class, courts apply a "strict scrutiny" standard in reviewing the action or law.   ***Id.* at 440**.   However, if no protected class is implicated, courts apply a more lenient "rational basis" test.   ***See Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978)**.   To prevail on an Equal Protection claim against it, under a rational basis standard, a state need only demonstrate its action or law bore "some rational relationship to a legitimate state purpose."   ***See id.* (quoting *French v. Heyne*, F.2d 994, 997 (7th Cir. 1976))**.   For purposes of scrutiny under the Equal Protection Clause, those who suffer from mental illness are not a protected class.   ***City of Cleburne, Tex*, 473 U.S. at 442 – 43**.

Both of the actions that Plaintiff clams violated the Equal Protection Clause were allegedly committed by Defendant Mayer.   The first act in question is Defendant Mayer's statement calling Plaintiff "fucking nuts" for taking various medications for his mental health issues.   Though inappropriate, such a comment does not violate the Equal Protection Clause.   In *DeWalt v. Carter*, the prisoner plaintiff also brought an Equal Protection claim against a correctional officer due to sexually suggestive and racist comments made to the prisoner by the officer.   ***DeWalt*, 224 F.3d at 610, 612**.   The Seventh Circuit, however, held that "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."   ***Id.* at 612**.   Specifically, the Court stated that such comments by themselves did not deny the prisoner equal protection of the laws.   ***Id.*   *See also, Williams v. Bramer*, 180 F.3d 699,**

**707 (5th Cir. 1999) (holding that the mere use of a racial epithet by itself, by a police officer toward a suspect, is not sufficient to constitute an Equal Protection violation)**. If, as the Seventh Circuit and other courts have found, mere derogatory statements toward one's race—a protected class—do not constitute a violation of the Equal Protection clause, then a derogatory statement alone toward a non-protected class certainly does not violate the Fourteenth Amendment.

The second act by Defendant Mayer which Plaintiff claims is discriminatory is that Defendant Mayer disregarded the threat to Plaintiff upon learning that Plaintiff took medication for psychiatric issues. Other than Plaintiff's statement at his deposition, there is little evidence, at best, to support his assertion that Mayer disregarded any threat against Plaintiff's cellmate or Plaintiff himself due to learning of Plaintiff's medication. Defendants have provided evidence, in the form of the disciplinary ticket, indicating that five confidential sources residing in Plaintiff's area lead Defendant Mayer to conclude that Plaintiff was not truthful in his kite and interview with Mayer. Plaintiff, in not responding, has not disputed these facts, and the Court accepts them as true pursuant to Federal Rule of Civil Procedure 56(e) and Local Rule 7.1(c). Therefore, the undisputed facts demonstrate that Defendant Mayer had a non-discriminatory motive in issuing Plaintiff a disciplinary ticket. [1] As such, the undisputed facts viewed in the

---

[1] The Court notes that ordinarily, without an affidavit from Defendant Mayer, there would be hearsay issues in relying on the disciplinary ticket as evidence that there were confidential sources indicating that Plaintiff lied and that Defendant Mayer relied on these sources in writing-up Plaintiff. *See* FED.R.CIV.P. **801, 802**. With Plaintiff's failure to contest the motion for summary judgment, however, and dispute Defendants' facts, the Court takes the facts as set forth by Defendants as undisputed, even when relying on the disciplinary ticket itself.

light most favorable to Plaintiff fail to demonstrate that Defendant Mayer violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Therefore, summary judgment is also appropriate as to Count 2 against Defendant Mayer.

### FIRST AMENDMENT RETALIATION CLAIM

An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *DeWalt*, **224 F.3d at 618**. Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000)**. In a First Amendment case, the burden of proof is split between the parties. *Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)** (**citing** *Mt. Healthy Board of Education v. Doyle*, **429 U.S. 274 (1977))**. First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* **at 635**. The burden then shifts to defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* Evidence that shows that a prisoner did not violate the regulation can show retaliation. *Hale v. Scott*, **371 F.3d 917, 920 (7th Cir. 2004)**.

The undisputed facts fail to demonstrate that Defendant Mayer, in writing a disciplinary ticket, was motivated by protected conduct. Plaintiff, at his own deposition, testified that he was not saying that Defendant Mayer retaliated against him

because he filed some grievances.   Rather, his testimony indicates that he is asserting that Defendant Mayer retaliated against him for writing a kite indicating a gang-related stabbing was going to occur.   As previously articulated in regards to the Court's Equal Protection analysis, however, the Court finds that Plaintiff also cannot recover on his retaliation claim.   For the reasons that the undisputed facts fail to demonstrate a lack of discriminatory intent based upon the rationale for issuance of the disciplinary ticket, the Court also finds the lack of evidence demonstrating retaliatory motive.   As such, summary judgment is proper as to Count 3 against Defendant Mayer.

## DUE PROCESS

In order for a prisoner to recover on a claim challenging the process afforded in a prison disciplinary proceeding, the facts must demonstrate (1) constitutionally deficient procedural due process as to the proceeding, and (2) a resulting deprivation of a liberty or property interest caused by the defendants.   *Scruggs v. Jordan,* **485 F.3d 934, 939 (7th Cir. 2007)**.   As to the second factor, Placement in disciplinary segregation implicates a liberty interest when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin v. Connor,* **515 U.S. 472, 485 (1995)**.   In determining whether a liberty interest is implicated, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured."   *Hardaway v. Meyerhoff*, **734 F.3d 740, 743 (7th Cir. 2013) (quoting** *Marion v. Columbia Correctional Inst.*, **559 F.3d 693, 697 (7th Cir. 2009) ("***Marion I***")) (emphasis in original) (internal quotations omitted)**.

The undisputed facts fail to demonstrate that Plaintiff's time in disciplinary segregation implicated a liberty interest.   Plaintiff spent 304 days in disciplinary segregation, which at the pleadings stage would demand a factual inquiry.   *See Marion I, supra*, **at 698**.  The summary judgment stage, however, is the "put up or shut up moment in a lawsuit," *see Johnson v. Cambridge Industries, Inc.*, **325 F.3d 892, 902 (7th Cir. 2003) (quoting** *Schacht v. Wisconsin Dept. of Corr.*, **175 F.3d 497, 504 (7th Cir. 1999)) (internal quotations omitted)**, and, here, Plaintiff has failed to put up any evidence in response to Defendants' motion.   The undisputed facts fail to demonstrate any atypical and significant hardships on Plaintiff in relation to ordinary prison life.   Though Plaintiff only saw mental health personnel once during his segregation *at Menard*, he was only in segregation at Menard for a little over a month before he was transferred to Pontiac.   Regardless, there is no evidence that Plaintiff's mental health deteriorated, or that he was otherwise negatively impacted during his stay in segregation.   In fact, Plaintiff acknowledged that he received his medication while in segregation.   There is no other evidence regarding the conditions of Plaintiff's segregation, and as such, no reasonable juror could find facts demonstrating that Plaintiff suffered an atypical and significant hardship.   The length of stay in segregation alone cannot make Plaintiff's case for him, as the Seventh Circuit has found no evidence to demonstrate the implication of a liberty interest in a case involving a similar length of stay in segregation. *See Marion v. Radtke*, **641 F.3d 874 (7th Cir. 2011) (where inmate failed to respond to defendants' motion for summary judgment, summary judgment for defendants on**

**due process claim was upheld even in light of 240 day stay in segregation)**.   Since the Court finds that there is no evidence demonstrating the implication of a liberty interest, it need not address the alleged procedural deficiencies surrounding the Adjustment Committee's proceedings.   Summary judgment is appropriate as to Count 4 against Defendants Hughes, Hart, and Cowan.

FAILURE TO RESPOND TO GRIEVANCES

There is no supervisory liability in an action brought pursuant to § 1983, and, therefore, to be held individually liable, a defendant must have personal responsibility for any violation of a constitutional right.   *Sanville v. McCaughtry*, **266 F.3d 724, 740 (7th Cir. 2001)**.   An official may be held liable, however, if he "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye" toward it. *Gentry v. Duckworth*, **65 F.3d 555, 561 (7th Cir. 1995) (citations omitted)**.

Regardless of whether Defendant Harrington approved, condoned, or turned a blind eye, etc. to any conduct, Plaintiff cannot recover as a matter of law against the defendant.   Plaintiff's claim against Defendant Harrington is based on Plaintiff's contention that Harrington ignored Plaintiff's complaints about the interview with Defendant Mayer and Mayer's treatment of Plaintiff.   The Court has already found, however, that there is not sufficient evidence of any underlying constitutional violations. As such, even if Defendant Harrington facilitated, condoned, or approved any conduct at issue in this matter, since the underlying conduct did not violate Plaintiff's rights, Defendant Harrington cannot be said to have violated his rights.   As such, summary

judgment is appropriate as to Count 5 against Defendant Harrington.

### CONCLUSION

For the reasons articulated above, Defendants' Motion for Summary Judgment (Doc. 70) is **GRANTED** for all counts, including any injunctive relief sought by Plaintiff. The Clerk of Court is **DIRECTED** to enter judgment for Defendants Mayer, Harrington, Hughes, Hart, Cowan and Godinez, and against Plaintiff Jordan.  As this Order disposes of all claims in this matter, the Clerk of Court is **DIRECTED** to close the case.

**IT IS SO ORDERED**.
DATED: 3/27/2017

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge